**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SONESTA RL HOTELS FRANCHISING INC. | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | :     CIVIL ACTION NO: _____ |
| | : |
| DE SOLEIL MANAGEMENT, LLC, | : |
| SO. BEACH HOTEL LLC, OCEANFRONT | : |
| EQUITIES CORP., GENERATIONAL GST | : |
| EXEMPT 2013 TRUST, and SOUTH BEACH | : |
| RESORT DEVELOPMENT LLC | : |
| | : |
|     Defendants. | : |

**COMPLAINT**

**<u>INTRODUCTION</u>**

1.  Plaintiff Sonesta RL Hotels Franchising Inc. ("<u>Sonesta</u>" or "<u>Plaintiff</u>") files this action against the above-named Defendants to recover damages of $1,141,816.29 plus contractual interest and attorneys' fees and costs incurred by Sonesta due to Defendants' breach of written agreements relating to Defendant De Soleil Management, LLC's operation of a hotel under one of Sonesta's hotel brands, Classico a Sonesta Collection.

**<u>THE PARTIES</u>**

2.  Sonesta is a Washington corporation with its principal place of business in Newton, Massachusetts.

3.  Upon information and belief, De Soleil Management, LLC ("De Soleil") is a Florida limited liability company with a place of business in Miami Beach, Florida.

82341411v7

4.      Upon information and belief, So. Beach Hotel LLC ("SBH") is a Delaware limited liability company with a place of business in Miami Beach, Florida.

5.      Upon information and belief, Oceanfront Equities Corp. ("OFEC") is a Delaware corporation with a place of business in Miami Beach, Florida.

6.      Upon information and belief, Generational GST Exempt 2013 Trust ("2013 Trust") is a trust formed under the laws of Florida with a place of business in Miami Beach, Florida.

7.      Upon information and belief, South Beach Resort Development LLC ("SBRD") is a Florida limited liability company with a place of business in Miami Beach, Florida.

8.      Upon information and belief, none of the members of the limited liability company Defendants are citizens of the same state as Sonesta and complete diversity exists.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and because the Franchise Agreement, Note, and Guaranties[1] state they are governed by Massachusetts law and contain mandatory forum-selection clauses requiring disputes between the parties to be brought in the federal court nearest Sonesta's principal place of business in Newton, Massachusetts — which is this District. Further, pursuant to the Franchise Agreement, the Note, and the Guaranties, Defendants irrevocably consented to this Court's jurisdiction. *See* Franchise Agreement, Section

---

[1] The Franchise Agreement, Note, and Guaranties are defined below.

17.G and H (Ex. 1); Note, Section 3.e (Ex. 3); General Guaranty, at C-1 (Exhibit C to Ex. 1); and Note Guaranty at 1 (Exhibit A to Ex 3).

## FACTUAL BACKGROUND

11.    Sonesta is one of the country's leading hospitality and leisure companies and is engaged in the franchising of hotels operating under Sonesta's proprietary brands, including Classico a Sonesta Collection.

### A. The Agreement, Note, and Guaranties

12.    Effective April 27, 2023, Sonesta and De Soleil entered into a Franchise Agreement (the "Franchise Agreement"), which granted De Soleil a franchise license (the "Franchise License") to operate the Hotel under the name "Z Ocean Hotel, Classico a Sonesta Collection." A true and correct copy of the Franchise Agreement is attached as **Exhibit 1**.

13.    The hotel property was located at 1437 Collins Avenue, Miami Beach, Florida 33139 (the "Hotel"). Upon information and belief, the Hotel was part of a larger condominium hotel property comprised of 80 total units, 40 of which De Soleil had the right to operate under the Sonesta brand pursuant to the Franchise Agreement, as amended. Upon further information and belief, 17 of the 40 units were owned by De Soleil or an affiliate and 23 of the units were owned by third parties with whom De Soleil had entered binding agreements to operate the units as part of the Hotel.

14.    Pursuant to Section 1 and Exhibit A of the Franchise Agreement, the Opening Date for the Hotel was April 30, 2023. The initial term of the Franchise Agreement was for twenty years through April 30, 2043.

82341411v7

15.     As consideration for the Franchise License, De Soleil agreed to pay Sonesta certain fees per Section 3 of the Franchise Agreement (the "Franchise Fees").

16.     Effective April 27, 2023, the parties entered into an Amendment to the Franchise Agreement (the "Amendment") providing, among other things, for Sonesta to make a development incentive loan of $600,000.00 to De Soleil for Hotel updates (the "Development Incentive Loan"). A true and correct copy of the Amendment is attached as **Exhibit 2**.

17.     The Development Incentive Loan is evidenced by a Development Incentive Promissory Note (the "Note") dated April 25, 2023, that De Soleil executed and delivered to Sonesta in the principal amount of $600,000.00.  A true and correct copy of the Note is attached as **Exhibit 3**.

18.     Under Section 2 of the Note, 10% of the original principal balance is forgiven annually for 10 years provided no Acceleration Event occurs under the Note and De Soleil is in full compliance with the Franchise Agreement, as amended.

19.     An Acceleration Event occurs if, among other things, the Franchise Agreement is terminated or De Soleil is notified of a breach under the Franchise Agreement, as amended, and fails to timely cure such breach.

20.     Under Section 2 of the Note, if an Acceleration Event occurs, the unforgiven principal balance becomes immediately due and payable from De Soleil and, if not paid within 10 days of an Acceleration Event, bears interest at the contract rate of 18% per annum.

21.     On April 25, 2023, SBH, OFEC and 2013 Trust (together, the "General Guarantors") each executed a Guaranty and Assumption of Obligations (the "General Guaranty") (i) unconditionally guaranteeing De Soleil would pay and perform each and every undertaking,

4

agreement and covenant set forth in the Franchise Agreement and the Note, and (ii) agreeing to be "bound by, and personally liable for the breach of, each and every provision in the [Franchise Agreement and the Note]." A true and correct copy of the General Guaranty is attached as Exhibit C to Exhibit 1, the Franchise Agreement.

22.     On April 25, 2023, SBRD executed a Guaranty and Assumption of Obligations (the "Note Guaranty") (i) unconditionally guaranteeing De Soleil would pay and perform each and every undertaking, agreement and covenant set forth in the Note, and (ii) agreeing to be "bound by, and liable for the breach of, each and every provision in the Note." A true and correct copy of the Note Guaranty is attached as Exhibit A to the Note.

23.     Hereafter, the Franchise Agreement and the Amendment collectively are referred to as the "Agreement" and the General Guaranty and the Note Guaranty collectively are referred to as the "Guaranties".

## B. Default, Termination and Amounts Due

24.     Pursuant to Sections 3 and 14.B(2)(a) of the Franchise Agreement, failure to pay any amount due and owing to Sonesta constitutes an event of default.

25.     Pursuant to Section 14.B(2)(a) of the Franchise Agreement, De Soleil's failure to cure an event of default within 10 days after receiving notice permits Sonesta to immediately terminate the Franchise Agreement.

26.     Termination of the Franchise Agreement under Section 14.B of the Franchise Agreement obligates De Soleil to pay Lost Revenue Damages to Sonesta ("Lost Revenue Damages"). Under Section 14.G(a) of the Franchise Agreement, Lost Revenue Damages equal (a) the lesser of 36 or the number of full or partial calendar months remaining in the Term, multiplied

5

82341411v7

by, (b) the aggregate of the Royalty fee and Brand Promotion Fund contribution percentages, multiplied by (c) the average monthly Gross Rooms Revenue of the Hotel during the 36 months preceding the date of termination.

27.     Section 3.H of the Franchise Agreement authorizes Sonesta to assess interest of 18% per annum on any past due obligations owed by De Soleil.

28.     De Soleil failed to pay amounts due under the Agreement.

29.     On August 22, 2025, in accordance with Section 14.B of the Franchise Agreement, Sonesta provided De Soleil written notice of the payment default ("Payment Default") and a deadline to cure of September 4, 2025 (the "First Demand Letter"). A true and correct copy of the First Demand Letter is attached as **Exhibit 4**.

30.     De Soleil failed to timely cure the Payment Default by September 4, 2025, entitling Sonesta to terminate the Franchise Agreement per Section 14.B(2)(a).

31.     Pursuant to Section 2 of the Note, the failure to cure the Payment Default by September 4, 2025, resulted in an Acceleration Event under the Note on September 5, 2025, thereby causing the entire outstanding balance on the Note (the "Note Indebtedness") to become immediately due and payable.

32.     When the Acceleration Event occurred, the Note Indebtedness was $600,000.00.

33.     Section 2 of the Note provides that if the Note Indebtedness is not paid in full within 10 days of the Acceleration Event, the outstanding balance will bear interest at the contract rate of 18% per annum.

34.     De Soleil failed to pay the Note Indebtedness within 10 days of the Acceleration Event and interest began accruing on the unpaid balance at the rate of 18% per annum on September 16, 2025.

35.     On December 30, 2025, Sonesta sent a second letter (the "Second Demand Letter") terminating the Agreement effective January 1, 2026 (the "Termination Date") due to De Soleil's failure to cure the Payment Default. A true and correct copy of the Second Demand Letter is attached as **Exhibit 5**.

36.     The Second Demand Letter informed De Soleil that the early termination of the Agreement triggered Sonesta's contractual right to recover Lost Revenue Damages and that all outstanding obligations owed under the Agreement and Note were due.

37.     The Second Demand Letter demanded payment of: $142,782.11 in Franchise Fees owed through November 30, 2025; $389,880.35 in Lost Revenue Damages; and $600,000.00 in principal owed on the Note together with accrued interest.

38.     On December 31, 2025, Sonesta sent De Soleil a final invoice for unpaid Franchise Fees ("Post-Termination Invoice") totaling $151,935.94, which included the unpaid Franchise Fees set forth in the Second Demand Letter together with additional Franchise Fees of $9,153.83 for December. A true and correct copy of the Post-Termination Invoice is attached as **Exhibit 6**.

39.     As of the Termination Date, therefore, unpaid amounts owed by De Soleil to Sonesta under the Agreement totaled $541,816.29 (the "Agreement Indebtedness") which amount consists of $151,935.94 in unpaid Franchise Fees and $389,880.35 in Lost Revenue Damages.

40.     Pursuant to Section 14.C(1) of the Franchise Agreement, the Agreement Indebtedness was due within 15 days of the Termination Date, or January 16, 2026.

82341411v7

41. De Soleil failed to pay the Agreement Indebtedness by January 16, 2026.

42. Per Section 3.H of the Franchise Agreement, Sonesta began assessing interest on the Agreement Indebtedness at the contract rate of 18% per annum on January 17, 2026.

43. As indicated, due to the Acceleration Event, interest on the Note Indebtedness began accruing at the rate of 18% per annum on September 16, 2025.

44. On January 28, 2026, Sonesta sent a third letter (the "Third Demand Letter") demanding payment of the Agreement and Note Indebtedness but De Soleil failed to pay. A true and correct copy of the Third Demand Letter is attached as **Exhibit 7**.

45. On February 18, 2026, Sonesta sent a fourth letter (the "Fourth Demand Letter" and together with the First, Second and Third Demand Letters, the "Demand Letters") demanding payment of the Agreement and Note Indebtedness in full but De Soleil failed to pay. A true and correct copy of the Fourth Demand Letter is attached as **Exhibit 8**.

46. Section 17.C of the Franchise Agreement entitles the prevailing party in any legal proceeding to recover reasonable attorneys' fees and costs.

47. Section 3.e of the Note requires De Soleil to pay attorneys' fees and costs incurred by Sonesta in the collection and enforcement of the Note.

48. Pursuant to the Guaranties, the General Guarantors and Note Guarantor are required to pay attorneys' fees and costs incurred by Sonesta in the collection and enforcement of the Agreement and the Note.

## COUNT I:
### (Breach of the Agreement – De Soleil)

49. Sonesta restates and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

50.     The Agreement is a valid and enforceable contract.

51.     Sonesta has fully performed its obligations under the Agreement.

52.     De Soleil breached the Agreement by failing to timely cure the Payment Default set forth in the First Demand Letter.

53.     Due to this breach, and pursuant to the Second Demand Letter, Sonesta terminated the Agreement as of the Termination Date and made demand for the payment of the Agreement Indebtedness totaling $541,816.29.

54.     Per Section 3.H of the Franchise Agreement, Sonesta began assessing interest on the Agreement Indebtedness at the contract rate of 18% per annum on January 17, 2026.

55.     Despite the Third and Fourth Demand Letters, De Soleil failed to pay the Agreement Indebtedness.

56.     The failures to pay constitute material breaches of the Agreement that were the direct and proximate cause of Sonesta's damages set forth herein.

57.     In sum, De Soleil owes Sonesta $541,816.29 in Agreement Indebtedness, interest accruing at the contract rate of 18% per annum from and after January 17, 2026, and Sonesta's attorneys' fees and costs arising from its enforcement of the Agreement.

WHEREFORE, Plaintiff Sonesta RL Hotels Franchising Inc. respectfully requests that the Court enter judgment in its favor and against De Soleil Management, LLC on Count I for (i) $541,816.29 for unpaid Agreement Indebtedness; (ii) interest on this amount at the contract rate of 18% per annum from and after January 17, 2026, until the judgment is paid and satisfied in full; (iii) attorneys' fees and costs incurred to date by Sonesta plus any additional fees and costs that

82341411v7

Sonesta incurs in obtaining and collecting on any judgment; and (iv) for such other and further relief as the Court deems just and proper.

### COUNT II:
**(Breach of the Promissory Note – De Soleil)**

58. Sonesta restates and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

59. Sonesta made the Development Incentive Loan to De Soleil and advanced loan proceeds of $600,000.00.

60. As evidence of its promise to repay the Development Incentive Loan, De Soleil executed and delivered the Note to Sonesta in the principal sum of $600,000.

61. The Note is valid and enforceable.

62. Sonesta has fully performed its obligations under the Note.

63. The Note Indebtedness totals $600,000.00.

64. Pursuant to the First Demand Letter, Sonesta provided De Soleil with written notice of a Payment Default under the Agreement.

65. De Soleil failed to timely cure the Payment Default by the September 4, 2025, deadline causing an Acceleration Event to occur under the Note on September 5, 2025.

66. The occurrence of an Acceleration Event caused the entire principal balance owed on the Note, the Note Indebtedness, to become immediately due and payable.

67. De Soleil failed to pay the Note Indebtedness within 10 days of the Acceleration Event and interest began accruing on the Note at the rate of 18% per annum on September 16, 2025.

68. Despite the Demand Letters, De Soleil has failed to pay the Note Indebtedness.

82341411v7

69.     These failures constitute material breaches of the Note that are the direct and proximate cause of Sonesta's damages set forth herein.

70.     These material breaches entitle Sonesta to recover attorneys' fees and costs.

71.     In sum, De Soleil owes Sonesta $600,000.00 on the Note, interest accruing at the contract rate of 18% from and after September 16, 2025, and Sonesta's attorneys' fees and costs arising from its enforcement of the Note.

WHEREFORE, Plaintiff Sonesta RL Hotels Franchising Inc. respectfully requests that the Court enter judgment in its favor and against De Soleil Management, LLC on Count II for (i) $600,000.00 in principal owed on the Note; (ii) interest accruing on the principal at the contract rate of 18% per annum from and after September 16, 2025, until the judgment is paid and satisfied in full; (iii) attorneys' legal fees and costs incurred to date by Sonesta plus any additional fees and costs that Sonesta incurs in obtaining and collecting on any judgment; and (iv) for such other and further relief as the Court deems just and proper.

**COUNT III:**
**(Breach of the General Guaranty – SBH, OFEC and 2013 Trust)**

72.     Sonesta restates and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

73.     The General Guarantors executed the General Guaranty, which is valid and enforceable.

74.     Under the General Guaranty, the General Guarantors unconditionally guaranteed the payment and performance of De Soleil's obligations under the Agreement and the Note.

11

82341411v7

75.     De Soleil defaulted on and breached the Agreement and Note by failing to pay the amounts due, including (a) the Agreement Indebtedness of $541,816.29, and (b) the Note Indebtedness of $600,000.

76.     Pursuant to the Agreement and Note, interest accrues on the Agreement Indebtedness at the contract rate of 18% per annum from January 17, 2026, and on the Note Indebtedness at 18% per annum from September 16, 2025.

77.     The General Guarantors' obligations to Sonesta are joint and several with De Soleil's obligations.

78.     Despite demand, the General Guarantors have failed to pay the amounts due.

79.     The General Guarantors failure to pay is a breach of the General Guaranty, entitling Sonesta to recover the Agreement Indebtedness, the Note Indebtedness, contractual interest, and attorneys' fees and costs as provided for in the parties' agreements.

80.     In sum, the General Guarantors are indebted to Sonesta under the General Guaranty for $541,816.29 in Agreement Indebtedness; $600,000.00 in Note Indebtedness; interest accruing on the Agreement Indebtedness at 18% per annum from and after January 17, 2026; interest accruing on the Note Indebtedness at 18% per annum from and after September 16, 2025; and Sonesta's attorneys' fees and costs arising for its enforcement of the Agreement and General Guaranty.

WHEREFORE, Plaintiff Sonesta RL Hotels Franchising Inc. respectfully requests that the Court enter judgment in its favor and against So. Beach Hotel LLC, Oceanfront Equities Corp., and Generational GST Exempt 2013 Trust on Count III for (i)   $541,816.29 in Agreement Indebtedness; (ii) $600,000.00 in Note Indebtedness; (iii) interest on the Agreement Indebtedness

82341411v7

at the contract rate of 18% per annum from and after January 17, 2026 until paid; (iv) interest on the Note Indebtedness at the contract rate of 18% per annum from and after September 16, 2025 until paid in full; (v) attorneys' fees and costs incurred to date by Sonesta plus any additional fees and costs incurred in obtaining and collecting on any judgment; and (vi) for such other and further relief as the Court deems just and proper.

## COUNT IV:
### (Breach of the Note Guaranty – SBRD)

81. Sonesta restates and incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

82. SBRD executed the Note Guaranty, which is valid and enforceable.

83. Under the Note Guaranty, SBRD unconditionally guaranteed the payment and performance of De Soleil's obligations under the Note.

84. De Soleil defaulted on and breached the Note by failing to pay the amounts due, including the Note Indebtedness of $600,000.00.

85. Pursuant to the Note, interest accrues on the Note Indebtedness at the contract rate of 18% per annum from September 16, 2025.

86. SBRD's obligations under the Note Guaranty are joint and several with De Soleil's obligations under the Note and, despite demand, has failed to pay amounts due.

87. SBRD's failure to pay is a breach of the Note Guaranty, entitling Sonesta to recover attorneys' fees and costs.

88. In sum, SBRD owes Sonesta $600,000.00 on the Note Guaranty, interest accruing at 18% from and after September 16, 2025, and Sonesta's attorneys' fees and costs arising from its enforcement of the Agreement and Note Guaranty.

13

82341411v7

WHEREFORE, Plaintiff Sonesta RL Hotels Franchising Inc. respectfully requests that the Court enter judgment in its favor and against South Beach Resort Development, LLC on Count IV for (i) $600,000.00 in Note Indebtedness; (ii) interest on the Note Indebtedness at the contract rate of 18% per annum from and after September 16, 2025, until paid; (iii) attorneys' fees and costs incurred to date by Sonesta plus any additional fees and costs that Sonesta incurs in obtaining and collecting on any judgment; and (iv) for such other and further relief as the Court deems just and proper.

Dated: May 13, 2026

Respectfully submitted,

LATHROP GPM LLP

/s/ William A. Scofield, Jr.
William A. Scofield, Jr.
BBO # 448940
28 State Street, Suite 2800
Boston, Massachusetts 02109
Telephone:  857.300.4032
Email:  william.scofield@lathropgpm.com
*Attorneys for Plaintiff Sonesta RL Hotels Franchising Inc.*

14

82341411v7